UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARC F. GERTE

     *Plaintiff,*

     *v.*

BOROUGH OF NAUGATUCK, PETER BOSCO, ROBERT O'DONNELL, PAUL BERTOLA, BRIAN NEWMAN, STEVEN HUNT, and JEAN DOBBIN,

     *Defendants.*

Civil No. 3:19cv1511 (JBA)

March 26, 2021

## RULING GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Marc Gerte brings this lawsuit against the Borough of Naugatuck, police officers Peter Bosco, Paul Bertola, Robert O'Donnell, Brian Newman, and Steven Hunt ("Municipal Defendants"), and Jean Dobbin. (Am. Compl. [Doc. # 27] at 1.) Plaintiff alleges that all Defendants deprived him of his property, his Labrador Retriever dog Jamie, in violation of the Fourteenth Amendment, the Fourth Amendment, and state common and statutory law.[1] (*See id.* at 9-28.) Municipal Defendants filed a motion to dismiss all claims against them [Doc. # 28], as did Defendant Dobbin [Doc. # 31]. For the reasons that follow, Defendants' motions are granted in part and denied in part.

### I.    Background

Plaintiff alleges that on June 18, 2016, he had a medical emergency in the Borough of Naugatuck caused by intoxication that required him to be transported to the local hospital for emergency medical treatment. (Am. Compl. ¶ 18; Incident Report, Ex. B to Am. Compl. [Doc. # 27-2].) At the time of the emergency, Plaintiff was with his companion animal

---

[1] Plaintiff originally brought Equal Protection and First Amendment claims which he has now abandoned. (Pl.'s Mem. [Doc. # 32] at 1.)

Jamie. (Am. Compl. ¶ 17.) Police Officer Robert O'Donnell took possession of Jamie and delivered her to Plaintiff's neighbor, Defendant Jean Dobbin.[2] (*Id.* ¶ 20.) After his release from the hospital, Plaintiff contacted Naugatuck animal control to recover Jamie, but was told that his dog was not at the facility and that the facility had no information on the dog's whereabouts. (*Id.* ¶ 22.) Plaintiff alleges that he and his friends continued contacting animal control for information that would enable them to find and retrieve Jamie but that Defendants Bosco and O'Donnell told Plaintiff to cease contacting animal control and the police department or he would be arrested. (*Id.* ¶ 23.)

On September 26, 2016, one of Plaintiff's friends told him that he believed Jamie was with Defendant Dobbin based on a picture she posted on Facebook. (*Id.* ¶ 24.) Plaintiff went to see Defendant Dobbin at her office, but she refused to answer the door. (*Id.* ¶ 25.) Defendant Officer Bertola soon arrived at the scene, and Defendant Dobbin admitted to having Jamie but refused to return her to Plaintiff. (*Id.*) Defendant Bertola refused to assist Plaintiff in reclaiming possession of Jamie. (*Id.*) Plaintiff subsequently contacted Defendant Officers Newman and Hunt at the police department for assistance in recovering Jamie, but they too refused to take any steps to assist him or allow him to file criminal charges. (*Id.* ¶ 26.)

On October 11, 2016, Plaintiff filed a complaint and application for a temporary restraining order with the State of Connecticut Superior Court, Docket No. CV 16-5018099, against Dobbin, which was subsequently refiled as a writ of replevin on December 2, 2016. (Mem. of Decision, Ex. D to Am. Compl. [Doc. # 27-4] at 1.) The state superior court conducted a hearing on December 19 and 20, 2016 and granted Plaintiff's writ, finding that "the plaintiff has clearly demonstrated that he is the rightful owner of the dog, Jamie Lee

---

[2] In a related replevin action, the Connecticut Superior Court found that Plaintiff had asked Defendant Officer O'Donnell to place the dog with Defendant Dobbin. (Mem. of Decision, Ex. D to Am. Compl. [Doc. # 27-4].) Plaintiff clarified at oral argument that he was not claiming this initial transfer of Jamie to Defendant Dobbin was unlawful.

and that the defendant has wrongfully detained the dog." (*Id.* at 6) As a result, Plaintiff was entitled to immediate possession of Jamie. (*Id.*)

Plaintiff now brings this federal lawsuit against Municipal Defendants and Defendant Dobbin alleging deprivation of rights under federal and state laws. Municipal Defendants move to dismiss all claims for failure to state a claim upon which relief can be granted. (Municipal Mot. to Dismiss [Doc. # 28] at 1.) Defendant Dobbin moves to dismiss all claims against her for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (Dobbin's Mot. to Dismiss [Doc. # 31 at 1.)

## II.     Legal Standard on a Motion to Dismiss

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), *i.e.* "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A plaintiff satisfies this standard when he or she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)). In evaluating a motion to dismiss for lack of subject matter jurisdiction, the Court accepts all facts alleged in the complaint as true and make all reasonable inferences in favor of the plaintiff. *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).

### III.    Section 1983 Claims

Municipal Defendants maintain that Plaintiff's constitutional claims brought pursuant to 42 U.S.C. § 1983 (Fourteenth Amendment due process claim, Fourth Amendment right to be free of unreasonable seizures, and *Monell* claim against the Borough) must be dismissed because 1) he failed to allege that Municipal Defendants acted under color of law and 2) no constitutional deprivation occurred as a result of any action by Municipal Defendants. (Municipal Mem. in Support of Mot. to Dismiss [Doc. # 28-1] at 11-13.) Defendant Dobbin argues that she is a private person, not a state actor, and therefore cannot be liable for any constitutional violations. (*See* Dobbin Mem. in Support of Mot. to Dismiss [Doc. # 31-1] at 5.)

### a.    State Action

Section 1983 "create[s] a species of tort liability for the deprivation of any rights, privileges or immunities secured by the constitution." *Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911, 916 (2017). "In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). "The Supreme Court has broadly interpreted the color of law requirement, concluding that 'misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law.'" *U.S. v. Giordano*, 442 F.3d 30, 42 (2d Cir. 2006) (quoting *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999)). But "the fact that someone holds an office or otherwise exercises power under state law does not mean, of course, that any wrong that person commits is 'under the color of law.'" *Id.* at 43. In order to survive a motion to dismiss, a plaintiff bringing a § 1983 claim therefore must allege that the defendant engaged in conduct that invoked the real or apparent power

of the state. *See Claudio v. Sawyer*, 409 Fed. App'x 464, 466 (2d Cir. 2011). Relatedly, a plaintiff must allege that the defendant was personally involved in bringing about the alleged constitutional deprivation of rights. *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005).

### i. Municipal Defendants

Municipal Defendants characterize Plaintiff's complaint as regarding "a personal civil dispute between the plaintiff and co-defendant Dobbin as to possession and ownership of the dog, Jamie" and maintain that the allegations do not implicate the actions of Municipal Defendants. (Def.'s Mot. at 11.) But the pleadings belie such a claim. Plaintiff alleges that Defendant O'Donnell arrived first at the scene of the emergency, took lawful, temporary possession of the dog, and transferred it to Defendant Dobbin pursuant to his authority and consistent with the official policy of the Naugatuck Police Department. (Am. Compl. ¶ 29-30; Hearing Tr., Ex. C to Am. Compl. [Doc. # 27-3] at 2.) Plaintiff alleges that when he contacted Naugatuck Police, Defendants Bosco and O'Donnell told him to "cease contacting Animal Control and the police department or he would be arrested." (*Id.* ¶ 54.) When Plaintiff discovered that Jamie was with Defendant Dobbin, Defendant Bertola refused to return the dog to Plaintiff. (*Id.* ¶ 33.) Defendant Bertola contacted Defendants Hunt and Newman, who both held supervisory positions, regarding the incident, but they refused to take any steps to return his dog to him. (*Id.* at ¶ 34.) Defendant Bertola then instructed Plaintiff to "present himself at the police department headquarters at 8:30 AM the following day, September 27, 2016, with proper paperwork for his dog." (*Id.* ¶ 68.) Although Plaintiff did present the proper paperwork, Municipal Defendants refused to return Jamie to Plaintiff or accept a criminal complaint against Defendant Dobbin for taking Jamie. (*Id.*)

Simply put, Plaintiff does not allege a mere personal dispute between himself and Defendant Dobbin. Plaintiff alleges that the Naugatuck Police Department maintained an

official policy regarding the safekeeping of animals like Jamie, that Defendant O'Donnell took Jamie pursuant to that authority, and that Defendants Bertola, Hunt, and Newman, in their capacities as police officers, refused to return Jamie to Plaintiff. (*See* Animal Care Policy, Ex. A to Am. Compl. [Doc. # 27-1].) Further, in response to Plaintiff's various complaints to Borough Police, Defendant O'Donnell and other Defendant officers threatened to arrest him if he continued contacting animal control and the police department for information about his dog. In alleging that Municipal Defendants took Plaintiff's dog pursuant to official policy, refused to return it to him, and would have him arrested if he kept inquiring about his dog, Plaintiff has adequately pleaded that Municipal Defendants used their power delegated to them by the state to unconstitutionally deprive him of his property. *See Isaacs v. City of New York*, No. 10-CV-4177 (NGG)(RLM), 2012 WL 314870, at *2; *Gronowski*, 424 F.3d at 293.

## ii. Defendant Dobbin

Although Defendant Dobbin is a private individual who is not an employee of the Borough of Naugatuck, Plaintiff maintains that Dobbin was "acting as an agent of the Defendant Borough" and therefore acted under color of law. (*See* Am. Compl. ¶ 2.) To plead a plausible § 1983 claim against a private individual, the plaintiff must allege that the private actor's conduct was "fairly attributable to the state." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). "[S]tate action may be found if, though only if, there is such a 'close nexus between the state and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). "What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity." *Id.* Courts consider whether a state has exercised its coercive power in effecting the outcome and whether a private actor willingly participated in a joint activity with the state. *Id.*

The Second Circuit has used the public function test to determine whether a private actor's conduct constitutes state action. *See Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259 (2d Cir. 2014) (holding that a volunteer ambulance service's employment decision was not state action under the public function test). The public function test focuses on "whether the activity historically has been an exclusive prerogative of the sovereign." *Id.* at 265. Animal control is one such sovereign function. *Id.* (citing *Fabrikant v. French*, 691 F.3d 193, 207-208 (2d Cir. 2012)).

Plaintiff alleges that "[t]he municipal defendants, pursuant to a written procedure of the Defendant Borough, . . . transferred or delivered possession and safeguarding of plaintiff's property [Jamie] to Defendant Dobbin" for "safekeeping." (Am. Compl. ¶ 20, 30.) This is consistent with Defendant Borough's policy regarding the safekeeping of animals with incapacitated owners which is to first attempt to secure a placement with a person "the pet owner(s) feel can responsibly care for the animal while they are unable to," and where this is not possible, "animals are taken to the Naugatuck animal control facility for safe keeping until such time as they can be returned to the owner or person chosen by the owner to care for the pet." (Policy, Ex. A to Am. Compl. [Doc. # 27-1].)

Since animal control involves taking possession of animals, Plaintiff's allegation that Municipal Defendants transferred Jamie to Defendant Dobbin for safekeeping can plausibly be viewed as the Borough delegating its animal safekeeping function to her, particularly when read in light of the Borough's policy that it holds animals for safekeeping either at its animal control facilities or with a person designated by the pet owner. A fully developed record would be required to determine if Defendant Dobbin was acting simply as a neighbor or friend of Plaintiff or as a state actor safekeeping an animal at the direction of police while its owner was incapacitated. The Court concludes that Plaintiff has plausibly alleged that Defendant Dobbin engaged in state action in refusing to return his dog to him after having her placed in her possession for safekeeping by Municipal Defendants.

## IV.     Procedural Due Process Claim

Plaintiff alleges that Defendants deprived him of due process by refusing to return his dog until he obtained a court order. (Am. Compl. ¶ 38.) To determine what sort of procedural process is required by the Fourteenth Amendment, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319 (1976).

Courts have consistently held that dogs are private property and that dog owners have a legitimate property interest in their dogs. *See, e.g.*, *Altman v. City of High Point, N.C.*, 330 F.3d 194 (4th Cir. 2003); *Siebert v. Severino*, 256 F.3d 648 (7th Cir. 2001); *O'Neill v. Louisville/Jefferson County Metro Gov.*, 662 F.3d 723 (6th Cir. 2011). Although Municipal Defendants contend that since Plaintiff does not claim his dog was tied to his economic livelihood his property interest is somehow attenuated, (*see* Municipal Defs.' Mem. at 15), they offer no authority supporting such a principle. Since Plaintiff has a recognized private interest in his dog, his pleading satisfies the first factor.

With respect to the second factor, the Seventh Circuit has held that for "temporary deprivation of property of slight value," including dogs, the only process constitutionally required was that the owner could petition the state court for return of the animal under the *Parratt/Hudson* doctrine.[3] *See Will v. City of Brookfield*, 406 F.3d 458, 460 (7th Cir. 2005) (holding that the sixty-day impound of the plaintiff's Doberman was not unconstitutional because she had access to postdeprivation state court remedies to secure

---

[3] The *Parratt/Hudson* doctrine reflects the principle that "no constitutional claim may be asserted by a plaintiff who was deprived of his . . . property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional *or state law fails to afford an adequate post-deprivation remedy for this conduct.*" *Martin v. Dallas Cty., Tex.*, 822 F.2d 553, 555 (5th Cir. 1987) (emphasis added).

return of the dog). However, in order to access a postdeprivation process, presumably, owners would need basic information about their animals' whereabouts and status. *See, e.g.*, *Kostiuk v. Town of Riverhead*, 570 F. Supp. 603, 609 (E.D.N.Y. 1983) ("[W]here, as here, the person knows where his or her property is, knows he or she will get it back soon, in this case after one night, and the property is not expected to be and is not, in fact, permanently damaged, then there is no constitutional deprivation of property."); *Pesce v. City of Des Moines, Iowa*, 439 F.Supp.3d 1101, 1121 (S.D. Iowa) (The pet owner's risk of loss or harm associated with the temporary deprivation in this case, where the owner was given notice of the location of the impounded pet and for how long it would be impounded, was low.).

Here, Plaintiff alleges that Municipal Defendants refused to provide him any information about his dog, including where the dog was being held and how to retrieve her in the future. Until he identified the location of his dog through his own efforts, Plaintiff could not avail himself of state court processes to recover his dog. *Accord Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[U]nauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a *meaningful* postdeprivation remedy for the loss is available." (emphasis added)). Thus, Plaintiff has sufficiently pled facts showing that the risk of erroneous deprivation of the property was high.

The third factor from the *Matthews* test looks at the Government's interest in carrying out its animal safekeeping function in relation to any fiscal or administrative burdens that additional or substitute procedures would entail. Municipal Defendants have an interest in animal control extending to this situation where the owner of a dog was incapacitated in public and unable to care for the animal accompanying him or her. *See* C.G.S. § 22-332 (giving a municipal animal control officer the authority to impound roaming dogs). The cost of instituting basic processes such as informing Plaintiff of the location of

his impounded dog would not appear to impose any substantial burden on Municipal Defendants or undermine their interest in handling roaming and wandering dogs.

The way in which Plaintiff's interest in his dog is alleged to have been interfered with by Defendants demonstrates a risk of erroneously depriving Plaintiff of his dog, and the cost of providing him with basic information of his dog's whereabouts and retrieval information appears minimal. Since facts satisfying the three *Matthews* factors have been pled, Plaintiff has stated a procedural due process claim.

## V.   Unreasonable Seizure

Where an initial seizure of property was reasonable, the "failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure," and improper retention of property may be addressed as a procedural due process claim. *Shaul v. Cherry Valley-Springfield Cent. School Dist.*, 363 F.3d 177, 187 (2d Cir. 2004); *see also Bennett v. Dutchess County, New York*, 832 Fed. App'x 58, 60 (2d Cir. 2020); *Kiyak v. Town of Fairfield*, No. 3:17-cv-1426 (AWT), 2019 WL 2895640 (D. Conn. Mar. 25, 2020) ("[P]laintiffs' claim that the continued confinement of [the dog] is an unconstitutional 'seizure' does not state a Fourth Amendment claim must fail as a matter of law, [and] such a claim is analyzed under the principles of procedural due process.")

Here, Plaintiff does not dispute that the initial taking of Jamie was lawful. (Am. Compl. ¶ 3 ("Plaintiff acknowledges such possession, for the limited purpose to temporarily safeguard his property, was lawful.").) Since Plaintiff only challenges the unlawful retention of Jamie, rather than the initial seizure of him, his Fourth Amendment claim fails as a matter of law. His attempt to distinguish the *Shaul* line of cases by arguing that he does not allege that an initial lawful seizure became unlawful, but that "there was only an unlawful seizure that took place on September 26, 2016" when Officer Bertola refused to return his dog, is unavailing. (Pl.'s Mem. at 23-24.) Plaintiff cites no caselaw supporting the significance of such a distinction, nor does he satisfactorily analyze why any such

distinction would accord with the circumstances and reasoning of *Shaul*. Whether the lawfulness of the taking was the result of consent or a non-consensual but constitutional taking is of no consequence. Accordingly, the Court dismisses Plaintiff's unreasonable seizure claim, leaving the substance of the claim to be addressed as a deprivation of procedural due process.

## VI.   *Monell* Liability

Under *Monell v. Dep't Social Services*, 436 U.S. 658, 694 (1978), a municipality may be liable for the acts of its employees or agent only if the harm inflicted was in the execution of its policy, practice, or custom. There is no vicarious liability for local governments solely on the basis of an employer-employee relationship. *Id.* at 692.  To survive a motion to dismiss a *Monell* claim, a plaintiff must allege injury resulting from one of four categories:

> (1) formal policy which is officially endorsed by the municipality, (*see Monell*, 436 U.S. at 690, 98 S.Ct. 2018); (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights, (*see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-484, 106 S.Ct. 1292, 1299-1300, 89 L.Ed.2d 452); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials, (*see Monell*, 436 U.S. at 690-91, 98 S.Ct. 2018); or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact" (*see City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989))

*McLaurin v. New Rochelle Police Officers*, 368 F. Supp. 2d 289, 293-294 (S.D.N.Y. 2005).

Plaintiff maintains that Defendant Borough, through its "custom, usage, practice or policy . . . encourages and/or condones a policy which does not require the safeguarding and return of property to its rightful owner" and "failed to provide adequate training to its officers regarding the proper procedures for taking and retaining possession of citizen's (sic) property and the safeguarding of same until its proper return, in order to comply with the constitutional and statutory limitations on handling property of citizens." (Am. Compl. ¶ 81.) This allegation implicates the first, third, and fourth theories of *Monell* liability. *See McLaurin*, 368 F. Supp. 2d at 293-294.

i.      *Formal Policy*

Plaintiff points to the Naugatuck Police Department's policy regarding the care of animals, which states:

> In situations where persons are incapacitated or otherwise unable to care for pets the Naugatuck Police Department makes every effort to locate someone the pet owner(s) feel can responsibly care for the animal while they are unable to. When situations occur and this is not possible, animals are taken to the Naugatuck animal control facility for safe keeping until such a time as they can be returned to the owner or person chosen by the owner to care for the pet. Every attempt is made to place pets outside of the animal control facility whenever possible as this is largely the preference of most pet owners. The Naugatuck PD generally does all it can to accommodate requests from pet owners to house their animals where they will be most comfortable.

(Ex. A to Am. Compl.) This policy does not direct officers or employees of the Department to, for example, refuse to return a dog to an owner on request or to provide any information to the owner about the dog's whereabouts. Rather, the policy is silent on how owners would go about locating and retrieving their animals once they are no longer incapacitated. Since the absence of policy is not a policy within the meaning of this theory of liability,[4] Plaintiff's *Monell* claim on the basis of a written policy fails.

ii.     *Persistent and Widespread Custom, Practice, or Usage*

Unwritten policies, including customs, usages, or practices, can also trigger *Monell* liability. *See Monell*, 436 U.S. at 690-91. "In describing 'custom or usage,' the [Supreme] Court used such phrases as 'persistent and widespread . . . practices,' 'systemic maladministration' of the laws, practices that are 'permanent and well settled,' and 'deeply embedded traditional ways of carrying out policy.'" *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). But

---

[4] Claims regarding the unconstitutional absence of a policy are more appropriately analyzed under the custom, practice, or usage or failure to train theories of liability. *See City of Oklahoma v. Tuttle*, 471 U.S. 808, 822-823 (1985); *see also Scott v. Lazure*, No. 3:19-cv-713 (VAB), 2020 WL 2615502 (D. Conn. May 22, 2020) ("A municipal policy exists when there is a decision by an official with policymaking authority, or a formal enactment by the municipality's governing body.")

alleging a pervasive practice amongst lower-level municipal employees alone is insufficient to state a *Monell* claim under § 1983. *See Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). Because the Supreme Court has excluded any municipal liability on a *respondeat superior* basis, a § 1983 plaintiff alleging violations by municipal agents without final policymaking authority must either allege "that a policymaker ordered or ratified the subordinates' actions" or that "the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the action." *Id.* In other words, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction may constitute a 'deliberate choice,' that acquiescence may 'be properly thought of as a city policy or custom that is actionable under § 1983." *Id.* (quoting *City of Canton*, 489 U.S. at 388).

Plaintiff alleges that Defendant Officer Steven Hunt was a captain in the police department at the time of Plaintiff's alleged constitutional deprivation and had supervisory responsibility over the officers. (Am. Compl. ¶ 26.) He alleges that Defendant Officer Bertola contacted Defendant Officer Hunt on September 16, 2016 regarding the return of his dog, but Defendant Hunt "failed and refused to take any steps to return Plaintiff's dog to Plaintiff or allow Plaintiff to file criminal charges or effect an arrest of the people who stole Plaintiff's dog." (*Id.*) Nowhere in the Amended Complaint does Plaintiff allege that Defendant Hunt was a final policymaking authority, and to withstand a motion to dismiss, a plaintiff must include facts in the complaint "sufficient to allege [that] the Chief [of Police] had authority to approve and did approve an act which the Chief knew" would hurt the plaintiff. *Dingwell v. Cossette*, 327 F. Supp. 3d 462, 475 (D. Conn. 2018). Without any allegations that any Municipal Defendants had final policymaking authority, Plaintiff fails to adequately allege that a final policymaker effectively ratified an unconstitutional action, and his *Monell* claim on this basis therefore fails. *See Amnesty America*, 361 F.3d at 126.

iii.     *Failure to Train*

"[A] municipality may be liable for the failure to train or supervise its employees where such a failure amounts to 'deliberate indifference' to the risk that its employees will unconstitutionally apply its policies without more training or supervision." *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012). "A pattern of similar constitutional violations by untrained employees is 'ordinarily required' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). Any showing of deliberate indifference requires "notice that a course of training is deficient in a particular respect." *Id.*; *see also Missel v. Count of Monroe*, 351 Fed. App'x 543, 546 (2d Cir. 2009) (holding that a § 1983 claim based on a failure to train must "plausibly allege[] that a municipal policymaker was knowingly and deliberately indifferent to the possibility that its officers were wont to violate constitutional rights" (internal quotations omitted)). Thus, Plaintiff must allege that the type of misconduct was known to Defendant Borough of Naugatuck. *See Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012).

Plaintiff pleads that Defendant Borough "failed to provide adequate training to its officers on the proper procedures for taking and retaining possession of citizen's (sic) property and the safeguarding of same until its proper return," and that this conduct resulted in his constitutional deprivation. (Am. Compl. ¶¶ 82-83.) He alleges that across a span of several months, several different officers refused (at times repeatedly) to return his dog despite his numerous requests. The involvement of different actors across a period of time gives rise to the plausible inference that the refusal to return Plaintiff's dog or provide a modicum of information about the location of the dog was an institutionalized practice within the Borough rather than a one-off event by an officer acting alone. *See Connick*, 563 U.S. at 62. Moreover, Plaintiff offers the written policy of Defendant Borough of Naugatuck Police on safekeeping of animals whose owners are incapacitated and points to the absence

of any directions regarding the return of animals to their owners. Plaintiff therefore alleges that a specific factual deficiency of policy makes an inference of failure to train plausible. However, Plaintiff does not adequately allege that the Borough of Naugatuck was on notice that its training programs were deficient. Although Plaintiff alleges that Defendant Hunt, the Chief of Police, participated in his constitutional deprivation, he does not make any allegations regarding the finality of Defendant Hunt's policymaking authority or to what extent any notice to Hunt might constitute notice to the Borough itself. Accordingly, Plaintiff's claim of *Monell* liability based on a failure to train fails.

## VII.   Conversion

To succeed in a conversion claim, a plaintiff must allege that "one, without authorization, assumes and exercises ownership over the property belonging to another, to the exclusion of the owner's rights. . . . Thus, [c]onversion is some unauthorized act which deprives another of his property permanently or for an indefinite time." *Deming v. National Mut. Ins. Co.*, 279 Conn. 745, 770 (2006) (quoting *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 43 (2000) (internal quotation marks omitted)). "The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with right to his right of dominion and to his harm." *Hi-Ho Tower*, 255 Conn. at 43.

Plaintiff alleges that Defendants' retention of Jamie and failure to return her interfered with his property rights and deprived him of rightful ownership. (Am. Compl. ¶ 94.) Moreover, he maintains that Defendant Dobbin's continued custody of Jamie, including feeding her, treating her as her own, attempting to purchase a dog license listing Dobbin as the owner, and asserting ownership in the replevin action illustrate her intent to permanently deprive him of his property. (*Id.* ¶¶ 92-94.)

With respect to Defendant Dobbin, Plaintiff adequately states a claim for conversion. Plaintiff alleges that, although he consented to Defendant Dobbin caring for Jamie until he

was no longer in treatment, Defendant Dobbin retained the dog long beyond that point despite his numerous pleas to get his dog back. The Superior Court indeed ruled that Plaintiff wrongfully retained possession over Jamie and ordered her return. (*See* Ex. D to Am. Compl. at 6.) Moreover, Defendant Dobbin offers no argument as to why this claim against her should be dismissed, instead exclusively objecting to the Amended Complaint's treatment of her as a state actor and arguing that her status as a private citizen should lead the Court to dismiss all claims against her without specifically discussing the state law claims against her. Accordingly, Defendant Dobbin's Motion to Dismiss the conversion claim is denied.

With respect to Municipal Defendants, because Plaintiff adequately alleged that Defendant Dobbin was a state actor, and Defendant Dobbin offered no argument as to why a conversion claim should not go forward, Municipal Defendants' motion to dismiss the conversion claim is denied.

### VIII.    Statutory Theft

Connecticut law forbids stealing any property of another or knowing receiving and concealing stolen property. C.G.S. S 52-564. The distinction between conversion and statutory theft is only that "statutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate prove conversion." *William Raveis Real Estate, Inc. v. Brancale*, No. CV116019722S, 2013 WL 656884, at *3 (Conn. Super. Ct. Jan. 29, 2013) (citing *Howard v. MacDonald*, 270 Conn. 111, 129 n.8 (2004)).

Plaintiff made specific allegations about Defendant Dobbin's intent, including that she attempted to license the dog as her own and presented the dog as her own, despite his numerous requests for return of the dog. Such allegations, particularly when coupled with the replevin action that resulted in Plaintiff's favor, plausibly evince Defendant Dobbin's

intent to deprive Plaintiff of his dog. Accordingly, Defendant Dobbin's motion to dismiss the statutory theft claim against her is denied.

As with the conversion claims, because Plaintiff has plausibly alleged that Defendant Dobbin is a state actor, then Municipal Defendants' alleged repeated refusals to return Plaintiff's dog to him despite his repeated requests also plausibly give rise to an intent to deprive Plaintiff of his property. Municipal Defendants' motion to dismiss Plaintiff's statutory conversion claim is therefore denied.

### IX.   Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* To assess a claim of qualified immunity, the Court need not first decide whether a constitutional violation took place. *Id.* at 236. Rather, it can first determine whether the right at issue was clearly established. *Id.* For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The Court does not "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Municipal Defendants maintain that because there was no constitutional violation, qualified immunity protects them from liability. (Def.'s Mem. at 2.) Municipal Defendants do not maintain that if any constitutional violation did occur, that the right was not clearly

established.[5] Because, in this case, Defendants only invoked qualified immunity on the basis of the absence of a constitutional violation, the Court can only dismiss the Amended Complaint on the basis of qualified immunity if it also dismisses all of Plaintiff's constitutional claims against Municipal Defendants. Since at least one of Plaintiff's constitutional claims against Municipal Defendants is permitted to go forward the Court will not apply qualified immunity at this juncture.

## X.    Conclusion

For the foregoing reasons, Municipal Defendants' Motion to Dismiss is GRANTED as to Counts Four (Unreasonable Seizure) and Five (*Monell* Claim) and DENIED as to Counts One (Procedural Due Process), Six (Conversion), and Seven (Statutory Theft). Defendant Dobbin's Motion to Dismiss is DENIED.

IT IS SO ORDERED.



_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 26th day of March 2021.

---

[5] Although Municipal Defendants attempted to raise this at oral argument, arguments raised for the first time at oral argument are waived. *Keefe v. Shalal*, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995); *see also Nobel Ins. Co. v. City of New York*, No. 00-CV-1328 (KMK), 2006 WL 2848121, at *16 (S.D.N.Y. Sept. 219, 2006) ("Normally, [the Court] will not consider arguments raised for the first time in a reply brief, let alone [at or] after oral argument."); *Halpert Enters., Inc. v. Harrison*, No. 07-1144-cv, 2008 WL 4585466, at *3 (2d Cir. Oct. 15, 2008) ("[G]iven [defendant's] failure to mention this argument [in its papers], raising any such claim even explicitly at oral argument would have been to no avail.")