UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CAROLYN A. KYZER, EXECUTRIX OF THE ESTATE OF MARC F. GERTE<br><br>*Plaintiff*,<br><br>*v.*<br><br>BOROUGH OF NAUGATUCK, PETER BOSCO, ROBERT O'DONNELL, PAUL BERTOLA, BRIAN NEWMAN, STEVEN HUNT, and JEAN DOBBIN,<br><br>*Defendants*. | Civil No. 3:19cv1511 (JBA)<br><br>July 18, 2022 |

**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

On September 25, 2019, Mr. Marc F. Gerte brought this lawsuit against the Borough of Naugatuck, police officers Peter Bosco, Paul Bertola, Robert O'Donnell, Brian Newman, and Steven Hunt ("Municipal Defendants"), and individual Jean Dobbin. (Am. Compl. [Doc. # 27] at 1.) He alleged that Defendants deprived him of his property—his dog Jamie Lee—in violation of the Fourteenth Amendment and state common and statutory law. (*See id.* at 9-28.) Mr. Gerte originally brought Equal Protection and First Amendment claims, which he abandoned, and his claims under the Fourth Amendment and *Monell* doctrine have been dismissed. (*See* Ruling Granting in Part & Denying in Part Defs.' Mots. to Dismiss [Doc. # 40].) Subsequently, on April 7, 2021, Mr. Gerte died and Carolyn A. Kyzer, the executrix of Mr. Gerte's estate, was substituted as Plaintiff [Doc. # 47]. Municipal Defendants and Defendant Dobbin now move for summary judgment. (Mem. of L. in Supp. of Mot. for Summ. J. ("Municipal Defs.' Mem.") [Doc. # 68-1] at 1; Mot. for Summ. J. ("Dobbin's Mem.") [Doc. # 69] at 1-5.) For the reasons that follow, the Court GRANTS the motions for summary judgment on the federal claims [Doc. # 68-69] and declines to exercise supplemental jurisdiction on the state law claims.

**I.      Background**

On June 18, 2016, Naugatuck police officer Robert O'Donnell observed Mr. Gerte asleep in a parking lot outside of a Kentucky Fried Chicken restaurant, with containers of malt liquor and his dog "Jamie Lee." (Police Report, Pl.'s Ex. F [Doc. # 73-5]; Dobbin Dep. [Doc. # 68-3] at 29:13-17.) Officer O'Donnell approached Mr. Gerte and observed that he was unable to sit up or complete a full sentence. (Police Report, Pl.'s Ex. F.) The officer notified Naugatuck Emergency Medical Services and Mr. Gerte was sent to Waterbury Hospital to detoxify. (*Id.*)

Officer O'Donnell then found Defendant Jean Dobbin, Mr. Gerte's neighbor. He informed her that Mr. Gerte was taken to the hospital and reported that Mr. Gerte stated to him, "I can't take care of [Jamie Lee] anymore. Give the dog to the lady that lives next door to me." (Dobbin Dep. at 31:2-4.) Officer O'Donnell told Defendant Dobbin that Jamie Lee was in his police cruiser, and if Ms. Dobbin did not take the dog, he would bring the dog to the Naugatuck Animal Control facility. (*Id.* at 29:18-21.) She accepted the dog because she thought of herself as the "protector of Jamie" and believed she was taking permanent possession of the dog. (*Id.* at 29:18-21; 33:18; 34:1-5.) This was not the first time that Defendant Dobbin had watched over Jamie Lee—she previously had taken care of the dog for two weeks in March 2016 when Mr. Gerte was unable to care for himself or his dog. (*Id.* at 26:13-25.)

After his release from Waterbury Hospital on June 18, 2016, Mr. Gerte began to search for Jamie Lee. (Replevin Mem. of Decision, Pl.'s Ex. A [Doc. # 73] at 5.) He could not remember his conversation with Officer O'Donnell, and when he contacted the Police Department and Animal Control, he was not provided with any information on Jamie Lee's whereabouts. (*Id.*) In fact, the police incident report makes no mention of Mr. Gerte's dog or her transfer to Defendant Dobbin. (*See* Police Report, Pl.'s Ex. F.) Eventually, in September 2016, Mr. Gerte learned that Defendant Dobbin had possession of Jamie Lee. (Dobbin Dep. at 41:17-42:3.)

2

But when he approached Defendant Dobbin's office to recover the dog, Defendant Dobbin called the police. (*Id.* at 37:21-25; 41:1-12.) The police informed the parties that Mr. Gerte would have to file a civil action to recover his dog. (*Id.* at 42:9-43:3.)

Mr. Gerte commenced a replevin action in Connecticut Superior Court to determine the proper owner of Jamie Lee. (Replevin Mem. of Decision at 1.) On December 22, 2016, after a two-day hearing, Judge Brazzel-Massaro held that Defendant Dobbin's possession of Jamie Lee was "wrongful[]" and ordered the dog's return to Mr. Gerte. (*See id.* at 6 ("Based upon the testimony and evidence, the plaintiff has clearly demonstrated that he is the rightful owner of the dog, Jamie Lee and that the defendant has wrongfully detained the dog.").) The Court concluded that Mr. Gerte was so intoxicated that he could not "have made the decision to give up ownership of his dog" when he instructed Officer O'Donnell to place his dog with Defendant Dobbin. (*Id.* at 4.) Defendant Dobbin promptly returned Jamie Lee to Mr. Gerte on December 23, 2016. (Dobbin Dep. at 47:20-48:3.)

## II.     Legal Standard

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

3

### III. Discussion

#### A. Section 1983 Claim

Section 1983 creates liability for those who deprive persons of their federal constitutional or statutory rights while acting under the color of state law. 42 U.S.C. § 1983. Plaintiff Executrix cites § 1983, arguing that by failing to properly report or document the dog's whereabouts in violation of Borough of Naugatuck policy and Connecticut General Statute § 22-332, and by refusing to promptly return the dog, Defendants jointly deprived Mr. Gerte of his protected property interest without due process of law. (Pl.'s Opp'n at 11.)

Municipal Defendants and Defendant Dobbin each seek summary judgment on this claim, and the Court considers their arguments separately.

##### 1. Municipal Defendants

Municipal Defendants argue, among other things,[1] that they are entitled to summary judgment because the officer's transfer of Jamie Lee to Defendant Dobbin without proper documentation did not violate a clearly established due process right. (Municipal Defs.' Mem. at 26.) "Qualified immunity protects officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A law is clearly established when "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can reasonably anticipate when their

---

[1] Municipal Defendants also assert that Defendant Dobbin is not a state actor, that Mr. Gerte did not have a property interest in Jamie Lee, that they did not deprive Mr. Gerte of any protected property interest, and that the individual defendants lacked sufficient personal involvement in any alleged constitutional violations. (Municipal Defs.' Mem. at 9–25.) Because the Court concludes that Municipal Defendants are entitled to qualified immunity, it will not address Municipal Defendants' other arguments

4

conduct may give rise to liability for damages." *Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir. 2012) (affirming the grant of summary judgment on qualified immunity grounds because plaintiff's right to not have her dog sterilized without some form of process was not a "clearly established" due process right) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). While a case need not be "directly on point," existing precedent "must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The due process right asserted by Plaintiff—the right to not have possession of one's dog transferred without proper notice—is not a due process right that was "clearly established" in 2016. Plaintiff cites no binding precedent which places this constitutional question "beyond debate," *Ashcroft*, 563 U.S. at 741, and it is far from clear that a reasonable official would have understood that transferring Jamie Lee without notation in a police report would violate a clearly established right.

Plaintiff raises several arguments against this conclusion, each of which misses the mark. She first asserts that qualified immunity cannot be granted at the summary judgment stage because disputed issues of material fact preclude a determination of the reasonableness of the officers' actions. (Pl.'s Opp'n at 14.) However, because there is no clearly established due process right to not have a dog transferred without proper notice, the Court does not reach the issue of whether the officer's actions were reasonable. *See Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1996) ("A party is entitled to summary judgment on qualified immunity grounds if the court finds that the rights asserted by the plaintiff were not clearly established, *or* no reasonable jury . . . could conclude that it was objectively unreasonable for the defendant[] to believe that he was acting in a fashion that did not clearly violate an established federally protected right." (internal citations and quotations omitted) (emphasis added)). Even though Plaintiff contends that Mr. Gerte's property interest in Jamie Lee was "clearly established," (Pl.'s Opp'n at 16), that is not the proper inquiry. Rather, the Court must determine whether Defendants' actions violated a clearly established due

5

process right. *Gilles*, 511 F.3d at 243. Because they did not, the officers are entitled to qualified immunity with respect to Plaintiff's procedural due process claim.

### 2. Jean Dobbin

Separately, Defendant Dobbin argues that she is a private citizen and cannot be held liable under § 1983. (Dobbin's Mem. at 1-2.) Plaintiff asserts two theories of state action, maintaining that Defendant Dobbin acted jointly with the Borough of Naugatuck or was delegated a public function. (Pl.'s Opp'n at 16-18.)

An "essential element" to a § 1983 claim is state action. *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). The acts of a "nominally private entity," however, may be attributed to the state where:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indp't Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citations omitted). The "touchstone" of joint action is a "plan, prearrangement, conspiracy, custom, or policy" shared by the private actor, or a "meeting of the minds" between law enforcement and private individuals. *Forbes v. City of New York*, No. 05Civ.7331(NRB), 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (quoting *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)).

Defendant Dobbin testified that she took the dog to be a "protector of Jamie," a role that she had earlier filled during Mr. Gerte's previous hospitalization. (Dobbin Dep. at 33:18.) She maintains that she watched over the dog as a "private citizen," and was not acting "on behalf of the Borough of Naugatuck to temporarily impound the dog," as an "arm of the police department," or in furtherance of the goals of the city of Naugatuck. (*Id.* at 33:19- 35:19.)

6

Plaintiff's evidence of a "plan, prearrangement, conspiracy, custom, or policy" between Defendant Dobbin and the Municipal Defendants is an email between Bryan Cammarata, the Administrative Lieutenant of the Naugatuck Police Department, and Mr. Mike Patrick of the Waterbury Republic American Newspaper. (Pl.'s Opp'n at 16.) In the email, the Administrative Lieutenant states that the Naugatuck Police Department tries to "locate someone the pet owner feels can responsibly care for the animal" when a person is incapacitated. (Email, Pl.'s Ex. K [Doc. # 73].) If this is not possible, "animals are taken to the Naugatuck animal control facility for safe keeping until such time as they can be returned to the owner or person chosen by the owner to care for the pet." (*Id.*) Plaintiff argues that Defendant Dobbin acted jointly with the Borough of Naugatuck by accepting Jamie Lee from Officer O'Donnell pursuant to this policy. But even if this email amounted to the "policy" of the Borough of Naugatuck, it does not demonstrate any "meeting of the minds" between Defendant Dobbin and the police. *See Dahlberg,* 748 F.2d at 92. The record, viewed in the light most favorable to Plaintiff, lacks any evidence from which to conclude that Defendant Dobbin acted jointly with the Municipal Defendants.

Nor does the evidence demonstrate that the Government delegated a public function to Defendant Dobbin. Private persons may become state actors when they exercise "powers traditionally exclusively reserved to the [s]tate," *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974), and animal control is a power "traditionally associated with sovereignty," *Fabrikant*, 691 F.3d at 209 (quoting *Horvath v. Westport Library Ass'n,* 362 F.3d 147, 152 (2d Cir. 2004)). But as the record in this case makes clear, Defendant Dobbin was not temporarily impounding the dog at the behest of the state but was acting as Jamie Lee's caregiver, as she had previously done. Because Defendant Dobbin is not a state actor, summary judgment will be entered in her favor on Plaintiff's § 1983 claim.

## B. Supplemental Jurisdiction

Having dismissed Plaintiff's claims brought under the Court's original jurisdiction, Municipal Defendants urge the Court to decline supplemental jurisdiction over Plaintiff's state law claims. (Municipal Defs.' Mem. at 28-29.) Plaintiff fails to articulate why her claims for conversion and statutory theft should remain in federal court. (*See generally* Pl.'s Opp'n.)

A district court has supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction" that they amount to the same Constitutional case or controversy. 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction" after the court has "dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988)); *see also Stuart v. Cnty. of Nassau*, No. 21-1187-cv, 2022 WL 2204177, at *2 (2d Cir. June 21, 2022). The analysis of these factors is "aided by the Supreme Court's additional guidance" that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari*, 455 F.3d at 122 (quoting *Cohill,* 484 U.S. at 350 n.7).

"Courts consider their familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation when evaluating judicial economy." *Chenesky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013) (declining to exercise supplemental jurisdiction over a claim under New York law after summary judgment was granted on the claim with original jurisdiction). The convenience factor considers whether the case is easily resolvable before the current court. *Id.* (citing *Cement & Concrete Workers Dist. Council Welfare Fund v. Frascone*, 68 F. Supp. 2d

8

166, 174 (E.D.N.Y. 1999)). In weighing fairness, courts consider principles of equity, *id.*, and whether the dismissal of the federal claims occurs "late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims." *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (holding that the district court did not abuse its discretion in exercising supplemental jurisdiction over state law claims where the federal claims were not dismissed until after the close of evidence at trial); *Stuart*, 2022 WL 2204177, at *2 (concluding that the district court acted within its discretion in declining to exercise supplemental jurisdiction over state law claims where the plaintiff "failed to demonstrate that he had expended substantial 'time, effort, and money in preparing [his] dependent claims'"). Finally, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *Kolari*, 455 F.3d at 122 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Judicial economy and convenience weigh in favor of declining jurisdiction. Mr. Gerte and Defendant Dobbin have previously litigated facts relevant to Plaintiff's state law claims in state court, (*see generally* Replevin Mem. of Decision at 1), and many of Plaintiff's exhibits in this case derive from the state court proceedings, (*see* Replevin Mem. of Decision, Pl.'s Ex. A; Gerte Dep. from Replevin Action, Pl.'s Ex. B [Doc. # 73-1]; Dec. 19 Tr. from Replevin Action, Pl.'s Ex. C [Doc. # 73-2]; Dec. 20 Tr. from Replevin Action, Pl.'s Ex. D [Doc. #73-3]). Indeed, Plaintiff's conversion and statutory theft claim are built upon Mr. Gerte's replevin action. (*See, e.g.*, Pl.'s Opp'n at 18-20 (arguing that summary judgment is inappropriate on the conversion and statutory theft claim because "[b]ased on the facts found by the replevin Court, Mr. Gerte at no time waived his property interest in Jamie.") The Court has reviewed these exhibits, but the state court certainly has a more intimate familiarity with these facts of this case and is better equipped to decide Plaintiff's claims under state law.

This action has been pending since September 2019 [Doc. # 1], but this length of time alone does not warrant the court's exercise of supplemental jurisdiction. *See Chenesky*, 942

Case 3:19-cv-01511-JBA   Document 84   Filed 07/18/22   Page 10 of 11

F. Supp. 2d at 393 (declining supplemental jurisdiction under § 1367(c) although the case was five years old); *Allard*, 957 F. Supp. at 424-25 (declining to retain jurisdiction over state law claims in a case which had pended for over thirteen years). Further, Plaintiff has not demonstrated that she has expended substantial effort or money developing her dependent claims such that fairness necessitates the Court's exercise of jurisdiction. *Stuart*, 2022 WL 2204177, at *2; *see also Allard v. Arthur Anderson & Co. (U.S.A.)*, 957 F. Supp. 409, 425 (S.D.N.Y. 1997) (noting that the "discovery taken in these cases would not be wasted if the cases were refiled in state court; it would be available for use there").

> Finally, comity weighs heavily against retaining jurisdiction. Comity reflects
>
> "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways."

*Levin v. Com. Energy, Inc.*, 560 U.S. 413, 421 (2010) (quoting *Fair Assessment in Real Estate Assn., Inc. v. McNary,* 454 U.S. 100, 112 (1981)). Under these principles, federal courts should allow state courts to maintain the consistency of their judgments. *See Chenesky*, 942 F. Supp. 2d at 395 ("State judges are the best arbiters of state law and comity weighs in favor of state decisions being interpreted by state judges, especially when, as here, parallel proceedings in state and federal court could lead to disparate results in each venue.").

In contrast to the Connecticut court's determination that Defendant Dobbin "wrongfully detained [Mr. Gerte's] dog," (Replevin Mem. of Decision at 1), Defendant Dobbin seeks summary judgment on the conversion claim because, she argues, there is "no evidence that [her] retention of the dog Jamie was wrongful." (Def. Dobbin's Mem. at 4.) Thus, principles of comity lead the Court to conclude that the Connecticut courts should be given the opportunity to ensure the consistency of these judgments. *See Chenesky*, 942 F. Supp. 2d at 395.

10

In light of a district court's discretion under 28 U.S.C. § 1367(a) and after balancing the relevant factors, the Court declines to exercise supplemental jurisdiction and dismisses the remaining claims without prejudice to refiling in state court.

## IV. Conclusion

For the foregoing reasons, Municipal Defendants' Motion for Summary Judgment and Defendant Dobbin's Motion for Summary Judgment [Doc. # 68-69] are GRANTED as to federal claims. The Court dismisses the state law claims without prejudice to refiling in state court for lack of jurisdiction. The clerk is requested to close this case.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of July 2022.